## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRANDEE W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-CV-00450-MTS** |
| | ) | |
| **FRANK BISIGNANO,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Brandee W. requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the application for disability benefits under the Social Security Act.  Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined that she was not disabled.  For the reasons discussed below, the Court **REVERSES** and **REMANDS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education,

---

[1] Effective May 7, 2025, pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "[I]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRD*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On January 21, 2022, Plaintiff filed an application for Title XVI supplemental security income, 42 U.S.C. § 1381, *et seq.*, under the SSA. (R. 17, 192). She alleged an inability to work beginning on January 16, 2021, which she later amended to January 21, 2022, due to limitations resulting from migraines and lower back pain. (R. 17, 192, 208). Plaintiff was fifty years old at the time of the ALJ's decision. (R. 25, 27). Plaintiff has at least a high school education and past relevant work as a metal sorter and packer/sorter. (R. 25, 41–42).

Plaintiff's application was denied both initially and upon reconsideration. (R. 17, 72, 81). At Plaintiff's request, ALJ Carrie Kerber conducted an administrative hearing via telephone on March 6, 2024. (R. 17, 33–65). ALJ Kerber issued a decision on April 5, 2024, finding that Plaintiff has not been under a disability since January 21, 2022. (R. 14–32). Plaintiff then sought review by the Appeals Council, which was denied on July 22, 2024. (R. 1–6). As a result, the decision of the ALJ represents the Commissioner's final decision for the purpose of further appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since January 21, 2022. (R. 19). At step two, she found Plaintiff suffered from severe impairments of degenerative disc disease, lumbar spine; degenerative joint disease, bilateral knees; migraines; obesity; depressive disorder; and bipolar disorder. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. (R. 19–21). Based upon her consideration of Plaintiff's subjective allegations and the medical evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work as defined in 20 CFR 416.967(b)" with the following limitations:

> "[S]he can frequently balance, she can occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, and she is limited to understanding, remembering, and carrying out detailed but not complex instructions, occasionally interacting with coworkers, supervisors, and the public, and adapting to occasional changes in a work routine.

(R. 21).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (R. 25). After consultation with a vocational expert ("VE"), the ALJ determined at step five that

Plaintiff could perform the representative jobs of marker, router, and routing clerk, all of which she found existed in significant numbers in the national economy. (R. 26). As a result, the ALJ found Plaintiff had not been under a disability since January 21, 2022. *Id.*

### Errors Alleged for Review

Plaintiff makes three allegations of error in her challenge to the Commissioner's denial of benefits on appeal. (Docket No. 15 at 8–26). First, she argues that the ALJ's step three finding that Plaintiff does not medically equal Listing 11.02 is not supported by substantial evidence because the ALJ failed to properly develop the record. *Id.* at 8–21. Second, Plaintiff asserts that the ALJ's RFC failed to account for all limitations resulting from Plaintiff's migraines. *Id.* at 21–24. Third, Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to apply the proper legal standard in assessing Plaintiff's subjective complaints. *Id.* at 24–26.

### The ALJ's Step Three Determination

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Dye v. Barnhart*, 180 F. App'x 27, 28 (10th Cir. 2006) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). While the ALJ is not required to discuss every piece of evidence available, she should discuss the evidence supporting her decision and explain why she found the plaintiff not disabled. *Id.* However, "a court could still affirm an ALJ's decision—despite the ALJ's failure to make specific step three findings—when 'confirmed or unchallenged findings made elsewhere in the ALJ's decision [i.e., at steps four and five]' 'conclusively preclude Claimant's qualifications under the listing at step three' such that '[n]o

reasonable factfinder could conclude otherwise.'" *Henderson v. Astrue*, 383 F. App'x 700, 701 (10th Cir. 2010) (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734–35 (10th Cir. 2005)).

Plaintiff contends that the ALJ had an affirmative duty to further develop the record by obtaining a medical expert before determining that Plaintiff's migraines did not medically equal Listing 11.02B. (Docket No. 15 at 8–21). Plaintiff further asserts that the failure to obtain an ME opinion was prejudicial, as her symptoms justify a finding of Listing 11.02B equivalency. *Id.* at 13–21. The Commissioner argues that the ALJ's findings are supported by substantial evidence and that she reasonably concluded Plaintiff's migraines did not equal Listing 11.02B. (Docket No. 17 at 5–10).

## A. The ALJ's Duty to Develop the Record

"In making a determination regarding disability, the ALJ 'shall develop a complete medical history,' which includes a 'reasonable effort[ ]' to obtain records from the claimant's treating physician." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (quoting 42 U.S.C. § 423(d)(5)(B)). However, the claimant also has an obligation to assist the ALJ in making the disability determination by furnishing medical and other relevant evidence. *Id.* (citing 20 C.F.R. § 404.1512(a), (c)); *see Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) ("The burden to prove disability in a social security case is on the claimant . . . ."). When the claimant is represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" *Branum*, 385 F.3d at 1271 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Moreover, an ALJ has "broad latitude in . . . seeking the opinion of medical experts." *Shannon G. M. v. Kijakazi*, No. 21-cv-00259-SH, 2023 WL 2303056, at *4 (N.D. Okla. Mar. 1, 2023) (citing *Simien v. Astrue*, No. 06-5153, 2007 WL 1847205, at *3 (10th Cir. June 28, 2007)). However, examination may be required when there is a "direct conflict in the medical evidence requiring resolution, [ ] where the medical evidence in the record is inconclusive, . . . [or] where additional tests are required to explain a diagnosis already contained in the record . . . ." *Hawkins*, 113 F.3d at 1166.

Plaintiff's argument that the ALJ erred in not obtaining an ME opinion relies in part on provisions within the Social Security Administration's Hearings, Appeals and Litigation Law (LEX) manual ("HALLEX"), specifically HALLEX I-2-5-34(A)(1), 1994 WL 637370.[2]  (Docket No. 15 at 11).  HALLEX I-2-5-34(A)(1) requires, in relevant part, that an ALJ obtain an ME opinion when "[t]he ALJ is considering finding that the claimant's impairment(s) medically equals a listing."  1994 WL 637370.  The Tenth Circuit has expressed doubt as to whether courts "can grant relief for violations of HALLEX procedures," but concluded that courts may grant relief for prejudicial HALLEX violations.  *Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015); *see Butterick v. Astrue*, 430 F. App'x 665, 666–67 (10th Cir. 2011); *Stacey L. R. v. Kijakazi*, Case No. 21-cv-00567-SH, 2023 WL 5202264, at *5 (N.D. Okla. Aug. 14, 2023); *Rockholt v. Berryhill*, Case No. CIV-17-578-G, 2018 WL 4462231, at *7 (W.D. Okla. Sept. 18, 2018).  A HALLEX violation is considered prejudicial when it "rendered the hearing fundamentally unfair or likely changed the outcome."  *Stacey L. R.*, 2023 WL 5202264, at *6.

---

[2] "[HALLEX] conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff . . . [HALLEX] also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels."  HALLEX I-1-0-1, 2005 WL 1863821.

At step three, the ALJ simply stated, "migraines cannot meet a listing because migraines are not a listed impairment, and there has been no medical source testimony on medical equivalence to a listing, such as 11.02B or 11.02D for dyscognitive seizures."[3] (R. 20). However, the ALJ was not required, per HALLEX I-2-5-34, to obtain an ME opinion because she determined Plaintiff did not have an impairment or combination of impairments meeting or medically equaling a listing. (R. 19). HALLEX I-2-5-34 does not require that an ALJ obtain an ME opinion simply because she considered whether Plaintiff met or equaled a listing. If so, every ALJ would be required "to obtain a medical expert opinion in each case that they consider a [l]isting, which would render HALLEX I-2-5-34 and its explanations of when obtaining such a report is discretionary and nondiscretionary meaningless." *Weinmeister v. O'Malley*, No. 4:23-cv-3151, 2024 WL 4218502, at *3 (S.D. Tex. Aug. 6, 2024), *report and recommendation adopted*, 2024 WL 4219743 (S.D. Tex. Sept. 11, 2024). Therefore, "HALLEX I-2-5-34(A)(1) does not apply when an ALJ finds no evidence that a claimant's impairments meet or medically equal a listing." *Bazemore v. O'Malley*, No. 4:23-cv-02948, 2024 WL 5354870, at *5 (S.D. Tex. Oct. 24, 2024)

---

[3] There is no specific listing for a primary headache disorder or migraines. Social Security Regulation ("SSR") 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). However, a finding of primary headache disorder, alone or in combination with another impairment, may be found to medically equal a listing. *Id.* The most analogous listing for a primary headache disorder is Epilepsy (Listing 11.02). *Id.* The regulations explain that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in [L]isting 11.02 (paragraph B or D for dyscognitive seizures), and [the ALJ] may find that his or her [medically determinable impairment(s)] medically equals the listing." *Id.* Pursuant to SSR 19-4p, Listing 11.02B "requires [that the claimant experience] dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 2019 WL 4169635, at *7; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02(B). Dyscognitive seizures "are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

(citing *Weinmeister*, 2024 WL 4218502, at *3; *Renne F. v. O'Malley*, Case No. 4:22-cv-04237, 2024 WL 894964, at *5 (S.D. Tex. Mar. 1, 2024)). Such is the case here, as the ALJ mentioned that "there has been no medical source testimony on medical equivalence" to support a finding that Plaintiff met or equaled Listing 11.02. (R. 20). Therefore, the ALJ did not err by not obtaining an ME opinion.

Here, the ALJ's step three analysis as to Plaintiff's migraines was succinct and conclusory. (*See* R. 20). While she offered some reasoning for her step three decision, noting there was no medical source testimony to support medical equivalency to Listing 11.02B, the ALJ failed to discuss the evidence on which she relied and explain why she reached her conclusion at step three as to Plaintiff's migraines. *Id.* The ALJ's step three conclusion as to Plaintiff's migraines "is similar to the 'bare conclusion' [the Tenth Circuit] found problematic in *Clifton* and is insufficient to satisfy the ALJ's duty under *Clifton*." *Henderson*, 383 F. App'x at 702 (citing *Clifton*, 79 F.3d 1007). However, if "the ALJ's decision [i.e., at steps four and five]' 'conclusively preclude [c]laimant's qualifications under the listing at step three' such that '[n]o reasonable factfinder could conclude otherwise[,]'" *Henderson*, 383 F. App'x at 701 (quoting *Fischer-Ross v*, 431 F.3d at 734–35), the Court may find the ALJ's step three error was harmless and does not warrant reversal or remand. Thus, the Court will proceed to an evaluation of the remainder of the ALJ's decision to determine whether the step three error was prejudicial.

**B. Harmless Error**

When evaluating a claimant's symptoms, the ALJ uses a two-step process:

First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations.  *Id.* at *7–8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole.  *See Casias*, 933 F.2d at 801.  An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  "[S]o long as the ALJ 'sets forth the specific evidence [s]he relies on in evaluating the [consistency of the claimant's subjective complaints],' [s]he need not make a 'formalistic factor-by-factor recitation of the evidence.'"  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

In evaluating Plaintiff's subjective complaints, the ALJ detailed the two-step process set forth in SSR 16-3p and the requirements of 20 C.F.R. § 416.929.  (R. 21).  As discussed previously, the ALJ determined that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.  (R. 22).  The ALJ then discussed Plaintiff's hearing testimony and reviewed her statements from a headache questionnaire dated April 15, 2022, and a function report from April 11, 2023.  (R. 22) (citing R. 43; 235–37; 255–62).  The ALJ noted the reported frequency of fifteen

migraines per month, with at least one to three occurring per week and lasting anywhere from several hours to several days. *Id.* Plaintiff reported that the migraines were also accompanied by symptoms including pain, nausea, dizziness, photophobia, and phonophobia. *Id.* She also reported needing to lay down in a cool, dark room during these episodes. *Id.* (referencing R. 236).

The ALJ also examined the various types of medications Plaintiff took for her migraines, noting that propranolol did not offer relief, but that Plaintiff's functionality appeared to increase with certain other medications which also did not cause side effects. (R. 23) (citing R. 518, 523, 533, 540, 547). The ALJ discussed Plaintiff's capacity to perform activities of daily living, including showering, getting dressed, doing laundry, and playing with her dog. *Id.* (citing R. 637). However, the ALJ acknowledged that Plaintiff tried various pharmaceutical treatments with insufficient results and that, as of May 2023, her migraines were deemed "suboptimally controlled." *Id.* (citing R. 1138–45).

As to the state agency consultants, the ALJ found their opinions that Plaintiff was capable of light exertion to be persuasive, in part because Plaintiff's history of migraines was accompanied by examinations reporting normal neurological functioning. (R. 24) (citing R. 69–70, 77–78). In concluding her RFC assessment, the ALJ noted Plaintiff's neurologist examinations were "essentially normal." (R. 25) (citing R. 1131, 1133, 1135, 1137). She also determined that, "despite [Plaintiff's] migraines, which would be expected to cause difficulties concentrating and interacting, as alleged in the claimant's function report and in her testimony, she was consistently pleasant and cooperative with treating providers, she consistently exhibited adequate recent and remote memory and adequate attention and concentration, and she exhibited good eye contact on examination." *Id.* (citing R. 441, 1117, 1130–37, 1209, 1220, 1231, 1242, 1253, 1261, 1297, 1300,

11

1309).  Therefore, the ALJ found Plaintiff capable of light work albeit with several limitations.  (R. 21).

"[M]any courts have noted that migraines present a particular difficulty."  *Lucero v. Kijakazi*, No. CIV-23-1145-STE, 2024 WL 3444628, at *4 (W.D. Okla. July 17, 2024) (citing *Groff v. Comm'r of Soc. Sec.*, No. 7:05-CV-54, 2008 WL 4104689, at *6–8 (N.D.N.Y. Sept. 3, 2008); *Federman v. Chater*, No. 95 Civ. 2892 (LLS), 1996 WL 107291, at *2–3 (S.D.N.Y. Mar. 11, 1996); *Abdon v. Astrue*, No. 10-96-GWU, 2010 WL 5391452, at *5 (E.D. Ky. Dec. 22, 2010); *McCormick v. Sec'y of Health & Human Servs.*, 666 F. Supp. 121, 123 (E.D. Mich. 1987), *aff'd*, 861 F.2d 998 (6th Cir. 1988)).  Because "there exists no objective clinical test which can corroborate the existence of migraines[,]" *Groff*, 2008 WL 4104689, at *7–8, the Tenth Circuit has determined that the "absence of unequivocal evidence of migraine headaches does not mean that claimant does not suffer from them, as there is no 'dipstick' laboratory test for such headaches." *Guinn v. Chater*, 83 F.3d 431, at *3 (10th Cir. 1996).

Here, the ALJ appears to discount Plaintiff's subjective complaints regarding her migraines by primarily relying on Plaintiff's history of normal neurological examinations and her ability to present well with treatment providers.  (R. 24, 25).  However, "[n]o diagnostic tests are useful [when assessing migraines], except to exclude other causes."  *Lucero*, 2024 WL 3444628, at *5 (quoting *Groff*, 2008 WL 4104689, at *7–8).  As such, the absence of abnormal neurological findings does not suggest Plaintiff's subjective complaints are inconsistent with the medical evidence.  *See Dunlap v. Colvin*, No. 15-cv-02139-NYW, 2016 WL 5405208, at *12 (D. Colo. Sept. 28, 2016) (citing *Pennington v. Chater*, 113 F.3d 1246 (Table), 1997 WL 297684, at *3 (10th Cir. 1997)).  Moreover, Plaintiff has consistently sought relief from migraines and received medication for that purpose.  Furthermore, Plaintiff testified that she is able to do activities of daily

12

living and leave the house only on days she does not experience migraines (R. 49, 51, 53, 54), suggesting that her ability to present well with treatment providers is not inconsistent with being debilitated on days during which she experiences migraines. The ALJ failed to explain how any evidence contradicted or was inconsistent with Plaintiff's subjective complaints. Therefore, "[b]ecause the ALJ did not . . . sufficiently articulate [her] reasoning, [the Court] cannot conduct a meaningful review of the pain assessment." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017). As such, the ALJ's error at step three of her decision is not harmless and remand is warranted.

### The Remaining Allegation of Error

Plaintiff's remaining argument is that the ALJ erred by not accounting for limitations such as time off task, absenteeism, or photophobia in Plaintiff's RFC. (Docket No. 15 at 22). Because Plaintiff's allegations regarding the RFC are directly affected by the ALJ's failures to perform proper step three and consistency analyses, the Court declines to consider this allegation of error. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

### Conclusion

For the foregoing reasons, the Commissioner's decision finding the Plaintiff not disabled is **REVERSED** and **REMANDED**.

IT IS SO ORDERED this 2nd day of September, 2025.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT